UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DARNELL GREEN,

                         Plaintiff,

         v.

JAMES GARCIA, *et al.*,

                         Defendants.

No. 18-CV-1745 (KMK)

OPINION & ORDER

Appearances:

Darnell Green
Pine City, NY
*Pro se Plaintiff*

Janice Powers, Esq.
State of New York Office of the Attorney General
White Plains, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

    Pro se Plaintiff Darnell Green ("Plaintiff"), currently incarcerated at Southport Correctional Facility ("Southport"), brings this Action, pursuant to 42 U.S.C. § 1983, against Correction Officers ("C.O.s") James Garcia ("Garcia"), F. Polito ("Polito"), A. Cefaloni ("Cefaloni"), P. Weber ("Weber"), D. Smith ("Smith"), and C. Martin ("Martin"), as well as Sergeant Osborne ("Osborne"; collectively, "Defendants"). (*See* Am. Compl. (Dkt. No. 12).)[1,2]

---

[1] Defendant James Garcia's name is incorrectly spelled as "Jameis Garcia" on the docket. The Clerk of the Court is respectfully directed to update the docket to reflect the correct spelling. (Dkt. No. 50.)

[2] Smith and Martin are currently listed as John Does 1 and 2 on the operative Amended Complaint because they were identified by Defendants after Plaintiff filed the Amended Complaint. (Dkt. No. 19.)

Plaintiff claims that Defendants violated his rights under the Eighth Amendment when they assaulted him and failed to intervene in these assaults. (*Id.* at 7–8.)[3]

Before the Court is a Motion To Dismiss (the "Motion") filed by Polito, Cefaloni, Weber, Smith, and Martin (the "Moving Defendants"). (*See* Moving Defs.' Not. of Mot. ("Not. of Mot.") (Dkt. No. 49).) For the reasons explained herein, the Motion is granted.

I. Background

A. Factual Background

The following facts are drawn from Plaintiff's Amended Complaint, and are assumed to be true for the purposes of the instant Motion. At the time of the alleged incident, Plaintiff was incarcerated at Green Haven Correctional Facility ("Green Haven"). (Am. Compl. 7.)

On January 4, 2016, Plaintiff was escorted to a "strip frisk room" to meet a court escort, who would presumably accompany him to court. (*Id.*) "[U]pon completion of [the] boss chair," two C.O.s grabbed Plaintiff and held him on either side while Osborne "cocked his baton all the way back," aimed it at Plaintiff, and hit him in his head "with every ounce of strength he had." (*Id.*) Garcia then began to "repeatedly punch[]" Plaintiff in his face while screaming profanities. (*Id.*) At the same time, the two C.O.s holding Plaintiff began to punch him in his sides, and Garcia continued to hit Plaintiff in the face. (*Id.*) Two other C.O.s then entered the room and began to "rain[] blows on [Plaintiff] all over [his] face, head, stomach[,] and neck." (*Id.*) One of the C.O.s hit Plaintiff in the face with his radio. (*Id.*) According to Plaintiff, the assault went on "for minutes." (*Id.*) Because Plaintiff felt the C.O.s trying to pull him away from the security camera, he "forced" himself onto the ground so the incident would be captured on camera. (*Id.*)

---

[3] Plaintiff's Amended Complaint has inconsistently numbered pages. Thus, the Court refers to the ECF-stamped page numbers at the top of each page to avoid confusion.

Plaintiff then put his arms behind his back because he wanted to assault to end, but a C.O. who was on Plaintiff's back began to "bend[] and twist[] [his] fingers," as if the C.O. was trying to handcuff Plaintiff. (*Id.* at 7–8.) Thereafter, Plaintiff began to feel kicks in his sides. (*Id.* at 8.) At this point, the Sergeant, presumably Osborne, told the C.O.s, "Ok[ay][,] that is enough[,] stop befor[e] you kill him," after which a C.O. kicked Plaintiff in the mouth. (*Id.*) At this point, Plaintiff was handcuffed, but the C.O. who had bent and twisted Plaintiff's fingers continued to do so. (*Id.*)[4] As a result of the incident, Plaintiff was taken to the hospital. (*Id.*)

Due to the incident, Plaintiff suffered from "bumps and knots" on his face and head, and he needed to get five staples in his head. (*Id.*) Plaintiff also had two black eyes, one of which was swollen shut, a "busted" lip, and a bloody nose. (*Id.*) Plaintiff can no longer see without glasses and now takes "mental health medication" because he is "mentally scared." (*Id.*) In his Amended Complaint, Plaintiff seeks compensatory damages of $5,000,000. (*Id.*) In his original Complaint, Plaintiff also requested a thorough investigation of all officers involved. (Compl. 7 (Dkt. No. 2).)

B. Procedural Background

Plaintiff filed the original Complaint on February 23, 2018, naming as Defendants Garcia and John Does 1–6. (*Id.* at 1.) In his Complaint, Plaintiff set forth that each of the John Doe Defendants worked at Green Haven, that one of them was a sergeant, and that the others were C.O.s. (*See id.* at 3–4.) Plaintiff stated that he was in the process of collecting the names of all Defendants involved, but that he had received paperwork related to the incident on which the names of the involved officers were redacted. (*Id.* at 5.) On March 29, 2018, the Court granted Plaintiff's request to proceed in forma pauperis ("IFP"). (Dkt. No. 4.)

---

[4] It is unclear whether Plaintiff was handcuffed before or during the incident.

3

The Court issued an Order of Service pursuant to *Valentin v. Dinkins*, 121 F.3d 72 (2d Cir. 1997), dated April 7, 2018, directing service on Garcia and instructing the Attorney General of the State of New York (the "Attorney General") to ascertain the identities of the John Doe Defendants who Plaintiff named in the original Complaint within 60 days. (*See* Order of Service ("First Order") 2–3 (Dkt. No. 6).)[5] The Order of Service provided that Plaintiff "must file an amended complaint naming the newly identified [D]efendants" within 30 days of receiving the information. (*Id.* at 3.) In response, the Attorney General notified the Court and Plaintiff by letter dated May 17, 2018 that "there were five . . . officers present in the strip frisk room on January 4, 2016 preparing [Plaintiff] for his escort to court," naming Garcia, Polito, Cefaloni, Weber, and Osborne as those individuals. (Dkt. No. 8.) The Attorney General noted that there was "no notation of a sixth . . . person other than [Plaintiff]." (*Id.*) Plaintiff then filed an Amended Complaint on May 30, 2018, naming Garcia, Polito, Cefaloni, Weber, and Osborne as Defendants. (Am. Compl. 1.) Plaintiff also included as Defendants in the Amended Complaint John Does 1 and 2, whom he labeled as C.O.s. (*Id.* at 1, 6.)

On June 1, 2018, the Court issued a second Order of Service, directing service on Polito, Cefaloni, Weber, and Osbourne. (*See* Order of Service ("Second Order") 2 (Dkt. No. 13).) The Court also instructed that "[i]f Plaintiff want[ed] the [Attorney General's] assistance in identifying [John Does 1 and 2], and the Court's assistance in serving them, he must provide more information about them by June 21, 2018," or else these Defendants would be dismissed from the Action. (*Id.* at 1 n.1.) In a letter docketed on June 22, 2018, Plaintiff asked whether the Court had received his Amended Complaint. (Dkt. No. 14.) In response, the Court provided

---

[5] In *Valentin*, the Second Circuit held that a pro se litigant is entitled to assistance from the district court in identifying a defendant. 121 F.3d at 75.

Plaintiff with "one last extension" to provide identifying information for John Does 1 and 2. (Dkt. No. 15.) Plaintiff replied in a letter docketed on July 10, 2018. (Dkt. No. 16.) Plaintiff wrote that he could not provide a physical description of the two John Doe Defendants because they "entered while the incident was already going on[,] and [Plaintiff] could not see them because blows were being rained on [him]." (*Id.*) Plaintiff noted that the incident report he attached to his Amended Complaint listed seven staff members as participants in the use of force, but their names had been redacted in the document given to Plaintiff. (*Id.*) Thus, the Court directed the Attorney General to confirm whether two other names were listed on the incident report. (Dkt. No. 17.)

On July 17, 2018, the Attorney General identified two additional C.O.s who "responded" to the incident and who were on the incident report—Smith and Martin. (Dkt. No. 19.) Thus, on July 18, 2018, the Court issued a third Order of Service, directing service on Smith and Martin. (*See* Order of Service ("Third Order") 2 (Dkt. No. 21).) On September 19, 2018, the Court instructed the Attorney General to provide an address for Osborne, because there was no record of an individual with his name at the provided address. (Dkt. No. 30.) The Attorney General responded on October 16, 2018, (Dkt. No. 32), and on October 18, 2018, the Court issued a fourth Order of Service, directing service on Osborne at his new address, (*see* Order of Service ("Fourth Order") 2 (Dkt. No. 34)). On December 17, 2018, Plaintiff filed a request for pro bono counsel, (Dkt. No. 37), which the Court denied without prejudice three days later, (Dkt. No. 40). Once all Defendants had been served, the Court granted an extension to Defendants to respond to Plaintiff's Amended Complaint on December 19, 2018. (Dkt. No. 39.) On December 21, 2018, Defendants filed a letter inquiring whether Plaintiff needed to file a second amended complaint that included Martin and Smith, instead of John Does 1 and 2. (Dkt. No. 41.) The Court

5

responded that Defendants could respond to Plaintiff's Amended Complaint as the "current operative pleading." (Dkt. No. 42.)

On February 7, 2019, Moving Defendants submitted a request to file a Motion To Dismiss. (Dkt. No. 45.) Pursuant to a briefing schedule set by the Court, (Dkt. No. 46), Moving Defendants filed the instant Motion on March 14, 2019, (Not. of Mot.; Moving Defs.' Mem. of Law in Supp. of Mot. ("Defs.' Mem.") (Dkt. No. 50)). Plaintiff filed a response to the Motion on March 19, 2019. (Pl.'s Mem. in Opp'n to Mot. ("Pl.'s Mem.") (Dkt. No. 51).) On April 30, 2019, Moving Defendants informed the Court that they would not file a reply. (Dkt. No. 55.)

## II. Discussion

### A. Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and quotation marks omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims

across the line from conceivable to plausible, the[] complaint must be dismissed," *id*.; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id*. at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering Moving Defendants' Motion, the Court is required to "accept as true all of the factual allegations contained in the [C]omplaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (same). And, the Court must "draw[] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Where, as here, a plaintiff proceeds pro se, the Court must "construe[] [his complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedure and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and quotation marks omitted)).

7

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks omitted). However, when the complaint is drafted by a pro se plaintiff, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (quotation marks omitted), including, "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted), statements by the plaintiff "submitted in response to [a] defendant's request for a pre-motion conference," *Jones v. Fed. Bureau of Prisons*, No. 11-CV-4733, 2013 WL 5300721, at *2 (E.D.N.Y. Sept. 19, 2013), and "documents either in [the] plaintiff[']s possession or of which [the] plaintiff[] had knowledge and relied on in bringing suit," *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quotation marks omitted).

B. Analysis

Moving Defendants argue that Plaintiff's Amended Complaint should be dismissed as to them because Plaintiff has "fail[ed] to sufficiently plea[d]" their personal involvement. (Defs.' Mem. 1, 4–7.) "It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 133, 138 (2d Cir. 2013). To establish personal involvement, a plaintiff must show that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed

to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Id.* at 139 (alterations, italics, and quotation marks omitted). In other words, "because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Therefore, Plaintiff must plausibly allege that Defendants' actions fall into one of the five categories identified above. *See Lebron v. Mrzyglod*, No. 14-CV-10290, 2017 WL 365493, at *4 (S.D.N.Y. Jan. 24, 2017) (holding that the five categories "still control[] with respect to claims that do not require a showing of discriminatory intent" post-*Iqbal*).

With the exception of Garcia and Osborne, Plaintiff's Amended Complaint does not name any of the Defendants or offer any facts indicating their individual involvement in the alleged excessive force. (Am. Compl. 7–8.) Plaintiff describes being assaulted by various C.O.s, but does not clarify which Defendants besides Garcia and Osborne were involved in the incident. (*Id.*) Although Polito, Cefaloni, and Weber appear in the caption of the Amended Complaint and on the list of Defendants, this is insufficient to allege the personal involvement of these Defendants. (*Id.* at 1, 5–6.) *See Ward v. Coley*, No. 18-CV-2382, 2019 WL 977887, at *5 (S.D.N.Y. Feb. 28, 2019) (highlighting that the plaintiff stated only that unnamed staff members assaulted him); *France v. County of Westchester*, No. 12-CV-5576, 2016 WL 1270259, at *9 (S.D.N.Y. Mar. 30, 2016) ("[The] [p]laintiff makes no mention of [certain defendants] among these broad-sweeping assertions against 'Corrections Officers' and 'Hearing Officers.'" (record citation omitted)); *Lovick v. Schriro*, No. 12-CV-7419, 2014 WL 3778184, at *3 (S.D.N.Y. July 25, 2014) (dismissing the plaintiff's § 1983 claims against certain defendants whose names

9

appeared only in the caption of the complaint and on the list of all defendants). Instead, "[t]o state a claim against each individually named [D]efendant, Plaintiff must include allegations as to that [D]efendant." *Tieman v. City of Newburgh*, No. 13-CV-4178, 2015 WL 1379652, at *25 (S.D.N.Y. Mar. 26, 2015) (citations omitted); *see Ochre L.L.C. v. Rockwell Architecture Planning & Design, P.C.*, No. 12-CV-2837, 2012 WL 6082387, at *6 (S.D.N.Y. Dec. 3, 2012) ("Where a complaint names multiple defendants, that complaint must provide a plausible factual basis to distinguish the conduct of each of the defendants." (citations omitted)), *aff'd*, 30 Fed. App'x 19 (2d Cir. 2013).

Plaintiff argues that he is unable to provide "all [of] the [Defendants'] names in the proper place[s] to show who did what," because the incident report he received has all of the names redacted. (Pl.'s Mem. 1; *id.* Ex. A ("Use of Force Report A"); *id.* Ex. B ("Use of Force Report B") (Dkt. No. 51).) In an earlier letter, Plaintiff also stated that he was unable to provide a physical description of Smith and Martin because they entered the room while he was being assaulted, and he could not see them because he was being hit. (Letter from Pl. to Court (July 10, 2018) (Dkt. No. 16).) The Court recognizes that in a claim for excessive force or failure to intervene in excessive force, "courts in the Second Circuit have allowed plaintiffs to use a flexible approach, recognizing the difficulty that plaintiffs may have in pleading who did what." *Tieman*, 2015 WL 1379652, at *26. For example, "[a] plaintiff need not establish who, among a group of officers, directly participated in the attack and who failed to intervene." *Jeffreys v. Rossi*, 275 F. Supp. 2d 463, 474 (S.D.N.Y. 2003) (citation omitted), *aff'd sub nom. Jeffreys v. City of New York*, 426 F.3d 549 (2d Cir. 2005). Even so, Plaintiff still must allege facts that support a plausible inference of personal involvement by Moving Defendants. For example, if Plaintiff were to state in the facts section of his Amended Complaint the names of each person

10

"who was present during the assault[], and that these [D]efendants *either* directly participated in the excessive force *or* failed to intervene," such allegations would be sufficient to allege personal involvement. *Snoussi v. Bivona*, No. 05-CV-3133, 2010 WL 3924255, at *3 (E.D.N.Y. Feb. 17, 2010) (emphasis added), *adopted by* 2010 WL 3924683 (E.D.N.Y. Sept. 29, 2010).

Thus, although the Court is mindful that the violent acts Plaintiff describes "are likely to have prevented [him] from identifying which of the [D]efendant officers specifically engaged in the bad acts," *id.* (brackets and quotation marks omitted), and that the redacted paperwork provided to Plaintiff prevents him from determining who played what role during the alleged altercation, (Use of Force Report A; Use of Force Report B), Plaintiff still fails to meet this liberal standard with respect to the Moving Defendants, because he has not even pled that each of them was individually present during the alleged assault, other than generally referring to "officers" throughout the Amended Complaint. (*See* Am. Compl. 7–8.) Thus, Moving Defendants' Motion is granted. However, in light of Plaintiff's pro se status, and because this is the first adjudication of Plaintiff's claims on the merits, Plaintiff will be permitted to file a second amended complaint that sets forth allegations with respect to each of the Defendants and their presence and/or participation during the alleged assault by, for example, including the names of each Defendant in his statement of facts and alleging that those Defendants were present during, or participated in, the assault.

### III. Conclusion

For the reasons stated above, Moving Defendants' Motion To Dismiss is granted. If Plaintiff wishes to file a second amended complaint alleging additional facts and otherwise addressing the deficiencies identified above, Plaintiff must do so within 30 days of the date of this Opinion & Order. Plaintiff is advised that the second amended complaint will replace, not

supplement, all prior complaints. The second amended complaint must contain all of the claims, factual allegations, and exhibits that Plaintiff wishes the Court to consider. Failure to timely file a second amended complaint may result in dismissal of Plaintiff's claims with prejudice.

The Clerk of the Court is respectfully directed to terminate the pending Motion, (Dkt. No. 49), and to terminate Defendants Polito, Cefaloni, Weber, Smith, and Martin from the docket.

The Clerk of the Court is also respectfully directed to mail a copy of this Opinion & Order to Plaintiff.

SO ORDERED.

DATED:	March 25, 2020
	White Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE